FILED
2025 Jul-17 PM 04:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**1IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL SHORT,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | ______________________ |
| **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Michael Short ("Mr. Short") brings this action for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") committed by The Lincoln National Life Insurance Company ("Lincoln National") in connection with the provision of an ERISA-governed disability benefit through a group insurance policy that funds the Group Long Term Disability Plan (the "Policy") for associates of Walmart, Inc. ("Walmart"), the employer of Mr. Short. In support of the relief requested herein, Mr. Short alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys:

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure long-term disability (hereinafter referred to as "LTD") benefits that are due to Mr. Short through the Group Long Term Disability Plan (hereinafter referred to as the "Policy") for associates of Walmart, Inc. (hereinafter referred to as "Walmart").

2. Mr. Short seeks all benefits to which he may be entitled should this Court determine that Lincoln National unjustly terminated his claim for his LTD benefit.

3. Mr. Short seeks LTD benefits together with any other disability-related benefit based on the conditions documented in his medical records.

4. Mr. Short suffers from Post-Concussive Syndrome, which causes frequent headaches, dizziness, and heat and light sensitivity. This condition and its symptoms leave him unable to work in any full-time capacity.

## JURISDICTION

5. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. § 1132(e) confers jurisdiction upon the district courts of the United States where, as here, Mr. Short's claims relate to an "employee welfare benefit plan" (as that term

is defined under 29 U.S.C. § 1001, *et. seq*) providing Group Long Term Disability. The Policy "may be found" within this district.

6. Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

7. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

**PARTIES**

8. Plaintiff Michael Short is a participant in the Plan and thus entitled to benefits available thereunder.

9. At the time of this filing, Plaintiff Michael Short resides in Oneonta, Alabama, which is located in the Southern Division of the Northern District of Alabama.

10. Defendant Lincoln National is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

11. The Plan has designated and named Lincoln National as the claims fiduciary for benefits provided under the Policy. Lincoln National is a "fiduciary" of the Plan as that term is defined by 29 U.S.C. § 1002(21).

12. One of Lincoln National's designated agents for service of process is:

The Lincoln National Life Insurance Company
c/o The Prentice-Hall Corporation System, Inc.
641 South Lawrence Street
Montgomery, AL 36104

13. Lincoln National is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets.

14. Lincoln National is an entity providing services to the Plan at issue.

15. Lincoln National is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined in 29 U.S.C. § 1002(14).

## THE PLAN

16. The Walmart LTD Plan was and is funded by an LTD insurance policy sold to Walmart, the company who also underwrote this group policy.

17. This group policy was purchased by Mr. Short's employer, Walmart, to confer certain benefits upon Mr. Short and other employees.

18. As a result, this Plan qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Mr. Short qualifies as a participant and/or beneficiary under the Plan as that term is used in 29 U.S.C. § 1132.

19. Under the terms of the Plan providing for certain benefits accruing upon Mr. Short becoming disabled, Mr. Short is "disabled" as this Plan defines that term.

20. Under the terms of this LTD Plan providing for certain benefits accruing upon the Plaintiff becoming disabled, Plaintiff and other plan participants are entitled to receive disability insurance benefits upon proving their satisfaction of the following disability definition:

> **"Disability"** or **"Disabled"**, with respect to Long Term Disability, means:
>
> 1. For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:
>
> i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

21. The policy defines "Material and Substantive Duties" as follows:

> **"Material and Substantial Duties"**, with respect to Short Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Job and cannot be reasonably eliminated or modified.
>
> **"Material and Substantial Duties"**, with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

22. The policy defines "Your Occupation" as follows:

> **"Own Occupation"**, with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is performed at Wal-Mart Stores, Inc .

23. The policy defines "Any Occupation" as follows:

> **"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

## LINCOLN NATIONAL'S LIABILITY

24. The LTD policy at issue here defines the level of disability required for a participant or insured to be eligible for benefits based on the participant's eligibility for disability benefits under the Policy's requirement for documentation that substantiates the finding of impairment.

25. Mr. Short's claim for his disability benefit stems from a work-related head and shoulder injury that occurred on December 29, 2023. Mr. Short was operating a forklift in the Walmart warehouse when he fell backward after a forty-pound box fell from overhead and hit him on the left side of his head and left shoulder.

26. As a result of that head injury especially, Mr. Short continuously suffers from post-concussion syndrome that results in headaches, dizziness, and light sensitivity.

27. Mr. Short's claim for his Long-Term Disability benefit (hereinafter referred to as an "LTD" benefit) originates from the symptoms that accompanied Mr. Short's post-concussion syndrome.

28. Mr. Short tried to return to work on January 24, 2024, but when he was exposed to loud noises, his symptoms worsened and were followed by nausea and vomiting.

29. In response to his symptoms, Mr. Short was instructed by his physician to not return to work.

30. On January 26, 2024, Mr. Short submitted a claim for his absence from work.

31. Mr. Short's claim for STD benefits was eventually approved based on him being found disabled under the terms of his STD plan.

32. On February 6, 2024, Mr. Short saw Dr. Thomas to discuss his reports of dizziness and headaches. At that visit, the CT scan showed residual effects from his concussion.

33. Neurologist Dr. James Houston saw Mr. Short on March 22, 2024 to discuss his ongoing dizziness, headache, nausea, uncontrollable shaking, crying, and trouble remembering information. Dr. Houston noted Mr. Short's severe sensitivity to light and multiple physicians have affirmed this. Dr. Houston also outlined irritability, mood changes, cognitive disfunction or speech changes.

34. For the next few months, Mr. Short was in and out of medical facilities as a result of his symptoms.

35. He received MRI exams on his head and neck, as well as visual exams. Physicians found his light sensitivity was consistent with symptoms of post-concussion syndrome.

36. Dr. Weise recommended on June 13, 2024 that Mr. Short see a vestibular therapist to relieve his symptoms and support his neck injury.

37. Mr. Short's LTD benefit was due to begin on July 18, 2024 after the Policy's elimination period was completed and his STD benefits were exhausted.

38. On August 15, 2024, Lincoln National sent Mr. Short a letter informing him of the end of his Short-Term Disability benefit and inviting him to apply for Long-Term Disability benefits.

39. On August 26, 2024, Mr. Short signed a Medical Authorization form that allowed Lincoln National to retrieve any record it needed for Mr. Short's case.

40. When Mr. Short was receiving his STD benefit through Lincoln National, it requested medical records from Mr. Short's physicians pursuant to that Medical Authorization Mr. Short executed for Lincoln National at its request. Mr. Short's physicians answered those requests by sending the responsive records.

41. Lincoln National used that medical authorization to retrieve records from all of Mr. Short's physicians on August 15, 2024.

42. As a result of those requests, they received records from Mr. Short's physicians in September of 2024.

43. Based on Lincoln National's internal claim log, no request letters were sent to Mr. Short's physicians past August 15, 2024 to obtain the relevant medical information.

44. Mr. Short's LTD claim was denied as the evaluation period concluded and Lincoln National determined that he was no longer disabled throughout and beyond the Policy's elimination period, a determination that notably conflicted with the prior approval of Mr. Short's STD claim.

45. Lincoln National sent Mr. Short a letter denying his claim for his LTD benefit on October 14, 2024. The reasoning behind the denial was that Mr. Short did not meet the definition of "disabled" under the Policy because Lincoln National believed his medical condition was not properly substantiated by medical evidence. They noted to have received the following medical information:

- *Medical records from UAB Eye Care: April 10, 2024 to June 21, 2024*
- *Medical records from Drayer Physical Therapy: June 3, 2024 to July 2, 2024*
- *Medical records from UAB Hospital Emergency Department: January 27, 2024*
- *Medical records from Dr. Houston: March 22, 2024 to July 2, 2024*
- *Neurology referral from Dr. McShan*

46. On November 21, 2024, Mr. Short wrote his appeal in response to Lincoln National's denial and informed them that not all of his documentation was shown.

47. The appeal was sent to Lincoln National via fax and Lincoln National received it on November 21, 2024.

48. In Mr. Short's November 2024 appeal, he noted that Lincoln National did not review all available information—documents not accounted for included

an appointment with Dr. Mark Swanson at the University of Alabama, Birmingham (hereinafter referred to as "UAB") Eye Clinic and an appointment with Dr. Robert L. Pearlman, a neurologist at the UAB Kirklin Clinic of Neurology.

49. In response to the November 2024 appeal, Lincoln National maintained their decision to deny Mr. Short's LTD benefit. They stated that "the information does not contain physical exam findings, diagnostic test results or other forms of medical documentation supporting your impairments and symptoms[.]"

50. In reference to Mr. Short's appeal, Lincoln National sent Mr. Short a letter, on December 9, 2024, saying that "it may be in your best interest to submit additional medical records/evidence for us to review as part of your appeal." Lincoln National did not mention the type of information that should be provided in support of Mr. Short's appeal, nor that they refused to request the information from either physician despite knowing of the treatment rendered by these doctors and having the authorization from Mr. Short allowing its access to those records upon request.

51. On January 25, 2025, Lincoln National sent a letter to Mr. Short that contained a clinical review conducted by an Appeals Nurse Disability Consultant

for Lincoln Financial based on the information it requested (which did not include the records identified by Mr. Short).

52. Based on the limited information Lincoln National had sought up to that point, this nurse clinical review asserted that "it would be reasonable to support restrictions and limitations of no activities of daily living from January 26, 2024, through July 2, 2024" but does note that the last medical visit she was given by Lincoln Financial to review was on July 2, 2024. She noted that she was not given any evidence of Mr. Short's medical visits past that date and, therefore, that restrictions and limitations cannot be determined beyond that time as there were no updated records on file.

53. Although Lincoln National said there were no updated records on file, Mr. Short nevertheless previously had informed Lincoln National that he had been going to doctors' visits and seeking treatment for his symptoms. Mr. Short mentioned Dr. Pearlman and Dr. Swanson in his appeal and reasonably understood from this provision of a Medical Authorization, which remained valid and on file with the company, that Lincoln National would make at least an initial effort to obtain those records for itself.

54. Around that same time, Dr. Pearlman had sent Lincoln National an updated letter stating that Mr. Short was a patient of his. The letter confirmed the

continuation of Mr. Short's diagnosis of Post-Concussive Syndrome, and Dr. Pearlman noted that Mr. Short is unable to work due to his symptoms.

55. Although the letter from Dr. Pearlman was sent to Lincoln National, they stated in their February 20, 2025 letter (affirming their denial of Mr. Short's LTD claim) that no additional medical information was given to Lincoln National and that available information remains insufficient to support impairment beyond July 2, 2024.

56. That February 20th letter also states that Lincoln National's disability nurse consultant found that Mr. Short's available information would support restrictions of limitations of activities only up to July 2, 2024, but that the information remained insufficient to support impairment beyond July 2, 2024.

57. Mr. Short has continued his treatment for post-concussive syndrome and those records would substantiate Mr. Short's medical diagnosis of post-concussive syndrome and are available to Lincoln National.

58. In February of 2025, Mr. Short retained Counsel to aid in this matter.

59. Since the denial of his appeal, Mr. Short, through Counsel, requested "relevant" documentation from Lincoln National pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii).

60. The documents identified thus far by Mr. Short as being part of ERISA Administrative Record (and thus bearing the bates range "Short

00001-00507") establish numerous breaches and errors committed by Lincoln National during the course of administering Mr. Short's different claims, including:

(a) The targeting of Mr. Short's claims for denial because ERISA governs;

(b) The failure by Lincoln National to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Mr. Short, 554 U.S. 105, 118 (2008);

(c) Taking an adversarial posture against Mr. Short instead of a fiduciary posture by searching for ways to avoid paying part or all of his claim;

(d) Failing to access the medical records Lincoln National had access to through a blanket medical authorization to access Mr. Short's medical records;

(e) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f) Unreasonably and arbitrarily terminating Mr. Short's benefit based on a "lack of documentation" as a part of a refusal to conduct a reasonable investigation into Mr. Short's claim based on the information he provided;

(g) Failure to provide the reviewing nurse of all information available to Lincoln National and formulating their denial of Mr. Short's claim based on that review;

(h) Failure to engage with the opinions of treating professionals in an abuse of discretion and in violation of ERISA's fiduciary duties;

(i) Failure to substantially comply with ERISA statutes and regulations; and

(j) Failing to adequately re-evaluate Mr. Short's benefit claim based on new and relevant medical documentation.

61. Despite Mr. Short's established disability and entitlement to coverage under the terms of the Plan, Lincoln National determined that Mr. Short was not "disabled" to preclude him from "any occupation" and, as a result, that he did not qualify for LTD benefits.

62. Lincoln National did not impart the critical information to Mr. Short of what they were requiring and what they needed when they said "[w]e encourage

you to submit additional information" and prevented Mr. Short from being able to comply with their request at a time when he still could have submitted a successful appeal. Instead, he was not aware of the specifics of what information was needed from him, which deprived him of his ability to obtain a full and fair review of his claim.

63. As set forth above in connection with Lincoln National's fiduciary breaches, Lincoln National's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Mr. Short. This presents an additional reason for application of a *de novo* standard to their decision.

64. As the fiduciary and claims administrator, Lincoln National has the responsibility setting forth the specific reasons for a claim denial, to communicate it in a way that can be understood by the participant, and to afford a reasonable opportunity to that participant for a full and fair review.

65. This conflict of interest further calls into question the credibility of Lincoln National's claims personnel and reviewers.

66. Lincoln National did not provide Mr. Short with a meaningful opportunity for a full and fair review of this claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1, and instead actively tried to subvert Mr. Short's ability to protect his right to such a review by substantiating their

claims decision based on incomplete reviews, despite having the capability and authority to acquire that information, and then using the lack of medical documentation as the basis for the termination of Mr. Short's benefit claim.

67. Lincoln National's decision process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations.

68. Lincoln National considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claim decision, and to excuse Mr. Short from further utilization of Lincoln National's claim process.

69. Mr. Short has exhausted all Plan remedies even though Lincoln National's abject failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Short respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

a) For an order awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy identified in this Complaint, as well as all prejudgment interest due thereon as permitted by law and equitable

principles, pursuant to 29 U.S.C. § 1132(a);

b) For a judgment against Lincoln National awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c) For an order requiring Lincoln National to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d) Such other relief as may be deemed just and proper.

Respectfully submitted,

M. Clayborn Williams
(ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Michael Short
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

The Lincoln National Life Insurance Company
c/o The Prentice-Hall Corporation System, Inc.
641 South Lawrence Street
Montgomery, AL 36104